**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Ex Parte: Theresa Ann Gathers, Intervenor, Appellant.

South Carolina Department of Social Services, Respondent,

v.

April Bailey and Pierre King, Respondents.

In the interest of minors under the age of eighteen.

Appellate Case No. 2018-000863

———————

Appeal From Charleston County
Jocelyn B. Cate, Family Court Judge

———————

Opinion No. 2019-UP-251
Submitted June 20, 2019 – Filed July 3, 2019

———————

**REVERSED AND REMANDED**

———————

Mary-Patricia Crawford, of Walterboro, for Appellant.

Jillian D. Ullman, of South Carolina Department of Social Services, of Charleston, for Respondent South Carolina Department of Social Services.

Melinda Inman Butler, of The Butler Law Firm, of
Union, for Respondent April Bailey.

Pierre King, of North Charleston, pro se.

Alwyn Taylor Silver, of Silver Law Firm, LLC, of
Georgetown, for the Guardian ad Litem.

---

**PER CURIAM:**  Theresa Ann Gathers (Foster Mother) appeals an order denying her motion to intervene in a Department of Social Services (DSS) removal action. On appeal, Foster Mother argues the family court erred in (1) denying her motion to intervene and (2) issuing an order that was incomplete and unsubstantiated under Rule 26, SCRFC.  We reverse and remand for a new permanency planning hearing.[1]

## FACTS/PROCEDURAL HISTORY

Child tested positive for cocaine and marijuana at his birth, and he was placed with Foster Mother on September 27, 2016.  His older brothers, Sibling 1 and Sibling 2, were placed together in a different home.

The family court held a merits removal hearing on November 3, 2016; at the hearing, the parties agreed DSS would be relieved of providing services to April Bailey (Mother) due to her extensive history with DSS.  The family court scheduled the initial permanency planning hearing for May 11, 2017; Foster Mother did not appear.  DSS recommended a permanent plan of termination of parental rights (TPR) and adoption.  However, this hearing was continued so the court could set a contested hearing.  The family court attempted to hold the permanency planning hearing on August 8, 2017; Foster Mother did not attend. The family court relieved Mother's counsel and continued the hearing because the parties did not have an agreement and Mother requested a new attorney.  The permanency planning hearing was rescheduled for September 18, 2017, but it was continued because Mother's attorney was in another trial.

On October 10, 2017, DSS provided Foster Mother notice that it intended to remove Child from her home and place him in an adoptive placement.  On October 23, 2017, Foster Mother filed a motion to restrain DSS from removing Child and to

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.

intervene in the DSS removal action; the motion indicated Foster Mother had a pending TPR and adoption action. Foster Mother submitted an affidavit averring Child was thriving in her care where he had been for over a year, and Foster Mother and her husband (collectively, Foster Parents) were emotionally attached to Child. DSS filed a return opposing the motion. The hearing on Foster Mother's motion was set for November 30, 2017, but it was continued due to lack of service.

On January 23, 2018, the family court held the initial permanency planning hearing. In its March 19, 2018 order, it adopted the permanent plan of TPR and adoption concurrent with reunification. The family court acknowledged the children were doing well in their foster homes and provided another permanency planning hearing would be held in six months.

On March 22, 2018, the family court held a hearing on Foster Mother's motion to intervene. Foster Mother's counsel informed the court Foster Mother had recently initiated a TPR and adoption action. He acknowledged she initially intended to adopt only Child, but "if it meant that she had to adopt [his brothers also], that she would be okay with doing that." Mother's attorney averred Mother was "working on her treatment plan" and wanted the children placed together. The guardian ad litem (the GAL) agreed the children should be placed together. The GAL's attorney indicated sibling visits had gone well and "[t]he two older ones [were] very protective of [Child]." He stated the GAL visited both foster homes and was "very happy with the foster parents."

On March 30, 2018, DSS submitted an affidavit from Elizabeth Bryant, the caseworker, alleging DSS's plan for the children was TPR and adoption, and DSS informed the foster families "on various occasions of the plan to have all three children adopted together." Bryant asserted Foster Mother was interested in adopting Child but said she would adopt Sibling 1 and Sibling 2 "if it meant she could keep [Child]." However, Bryant stated Foster Mother's home was licensed to accommodate only one additional child. Bryant asserted DSS approved a family for adoptive placement that was interested in adopting all three children, and Sibling 1 and Sibling 2 were moved to that home on October 23, 2017. Finally, she averred Sibling 2 referred to Sibling 1 as "brother"; Sibling 1 and Sibling 2 referred to Child as "baby"; Sibling 1 could name both of his younger brothers by their first names; and Sibling 1 asked about Child when they moved into the preadoptive home.

The GAL submitted an affidavit acknowledging Foster Mother provided an "excellent foster home" and Child thrived in her care but recommending Child be

moved to the preadoptive home with his brothers. She believed "the importance of these children maintaining their sibling bond and being placed together [was] in [their] best interest."

On March 30, 2018, the family court issued an order denying Foster Mother's motion to restrain and intervene. After citing the factors courts consider when determining whether a motion to intervene is timely, the court recounted the procedural history of the case. The court then found,

> On July 12, 2017, [Foster Mother] expressed her interest in adopting [Child] only. It appears that her later expressed interest in also adopting the older children was as a result of DSS'[s] stated objective that they wanted to keep the siblings together.
>
> . . . .
>
> [Child's] older brothers have already been placed in this foster-to-adopt home. There is no dispute that all of the brothers are bonded to each other.
>
> [Foster Parents] were not selected as the foster-to-adopt home for the children. Their home is also not approved by their foster care licensure to properly accommodate three minor children.

The court concluded,

> [T]he motion to intervene is untimely. [Foster Mother] gives no reason why she did not seek to intervene when she knew that DSS was looking for an adoptive placement that could take all three of the siblings. She fails to give a reason for the delay. The parties would be prejudiced by allowing intervention at this stage of the child protective services action. Moreover, [Foster Parents] have already filed their private TPR action. Consequently, DSS'[s] right to place the minor children in their care shall not be impeded in anyway.

This appeal followed.

**LAW/ANALYSIS**

On appeal from the family court, this court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). However, "a family court's evidentiary or procedural rulings . . . [are] review[ed] using an abuse of discretion standard." *Stoney v. Stoney*, 422 S.C. 593, 594 n.2, 813 S.E.2d 486, 486 n.2 (2018).

> Upon timely application anyone may be permitted to intervene in an action: (1) when a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Rule 24(b), SCRCP. Foster parents "may move to intervene in [DSS removal actions] pursuant to the rules of civil procedure and if the motion is granted, may move for review" of the case. S.C. Code Ann. § 63-7-1700(J) (Supp. 2018). "Generally, the rules of intervention should be liberally construed where judicial economy will be promoted by declaring the rights of all affected parties." *Ex Parte Gov't Employee's Ins. Co.*, 373 S.C. 132, 138, 644 S.E.2d 699, 702 (2007). When determining whether a motion to intervene is timely, courts should consider

> (1) the time that has passed since the applicant knew or should have known of his or her interest in the suit; (2) the reason for the delay; (3) the stage to which the litigation has progressed; and (4) the prejudice the original parties would suffer from granting intervention and the applicant would suffer from denial.

*Davis v. Jennings*, 304 S.C. 502, 504, 405 S.E.2d 601, 603 (1991).

Under these facts, the family court abused its discretion in finding the motion to intervene was untimely. *See Stoney*, 422 S.C. at 595 n.2, 813 S.E.2d at 487 n.2 (providing a family court's procedural rulings are reviewed under an abuse of discretion standard). Regarding the first prong—the time that passed since Foster Mother knew of her interest in the suit—the order denying intervention indicates

the family court believed Foster Mother should have known of her interest in the suit when she learned DSS was planning to place the children together. Initially, we note the record does not clearly establish *when* Foster Mother learned DSS intended to place the children together. Bryant's affidavit stated Foster Mother informed DSS on July 12, 2017, that "she was interested in adopting [Child], but she would adopt [Child's] two brothers . . . if it meant she could keep [Child]." However, Bryant did not state when DSS informed Foster Mother it intended to keep the siblings together, and there is no other evidence showing when Foster Mother should have known of DSS's intentions. Thus, the earliest date established by the record of when Foster Mother should have known DSS intended to keep the children together was July 12, 2017.

However, there is no indication from Bryant's affidavit that as of July 12, 2017, DSS did not intend to allow Foster Mother to apply to adopt Child and his siblings. Thus, there was no reason Foster Mother should have known at that time she needed to protect her interest by moving to intervene. According to Bryant's affidavit, DSS made its decision on the adoptive family on September 29, 2017, and it informed Foster Mother of its intention to remove Child from her home on October 10, 2017. This was the triggering moment when Foster Mother should have known of her interest in the suit.[2] Foster Mother filed her motion to intervene on October 23, 2017—just thirteen days after finding out DSS intended to remove Child from her home. Thirteen days is not an unreasonable delay. *See Davis*, 304 S.C at 504, 405 S.E.2d at 603 (finding a newspaper's motion to intervene to challenge the sealing of records was timely when it was filed within one month of the order sealing the records). Thus, the first and second prongs weigh in favor of granting intervention.

The third prong—the stage to which the litigation has progressed—also weighs in favor of granting intervention. When the motion was filed in October 2017, the

---

[2] We reject DSS's contention that Foster Mother should have known of her interest in the suit when Child was placed with her in September 2016. Such a finding would only encourage foster parents to file motions to intervene immediately upon placement, which could hinder our State's policy to support efforts at family reunification. *See* S.C. Code Ann. § 63-1-20(D) (2010) ("It is the policy of this State to reunite the child with his family in a timely manner, whether or not the child has been placed in the care of the State voluntarily."); S.C. Code Ann. § 63-1-30 (2010) ("This title shall be liberally construed to the end that families whose unity or well-being is threatened shall be assisted and protected, and restored if possible as secure units of law-abiding members . . . .").

family court had not yet held a permanency planning hearing. The initial permanency planning hearing was held in January 2018 while the motion to intervene was pending, and the permanency planning order provided a second permanency planning hearing would be held in six months. Because the removal action was ongoing and the permanent plan was going to be reviewed again, the third prong weighs in favor of granting intervention.

The fourth prong, which requires weighing the prejudice suffered by the parties in granting intervention against the prejudice suffered by the intervenor in denying intervention, also supports intervention. The removal action was ongoing and the permanent plan was going to be reviewed again; thus, intervention would not prejudice DSS or the parents. However, denying intervention prevented Foster Mother from presenting evidence to the court regarding Child's placement with her. *See* § 63-7-1700(H)(8) (Supp. 2018) (providing the family court "shall specify in its order . . . whether the child's current placement is safe and appropriate"). This placement decision would necessarily impact Foster Mother's separate TPR and adoption action; thus, Foster Mother was prejudiced by the order denying intervention.

Finally, under these facts, granting intervention was in Child's best interest. *See S.C. Dep't of Soc. Servs. v. Randy S.*, 390 S.C. 100, 107, 700 S.E.2d 250, 254 (Ct. App. 2010) ("[T]he best interests of [c]hildren is the paramount consideration."). The limited evidence about Child's wellbeing showed he was doing well in Foster Mother's home, and although the GAL supported moving Child, she acknowledged Foster Mother provided an "excellent foster home." DSS and the GAL focused on the sibling bond when asserting moving Child was in his best interest. However, the information in the record only suggested Child's siblings were bonded with Child; it did not suggest Child was bonded with his siblings. Although a sibling bond—whether formed or not yet formed—is a valid factor to consider when weighing best interest, it is not dispositive. When evaluating Child's best interest, we must look through his eyes—not the eyes of his siblings. Allowing Foster Mother to intervene and present her case would give the family court more information about Child's placement in her home, which would ultimately serve to best protect Child.[3]

---

[3] We do not suggest allowing intervention is *always* in a child's best interest. There may be situations, for example, when another party such as the GAL is aligned with the foster parent and can adequately present his or her case. Under these facts, however, allowing Foster Mother to intervene and present her case

Based on the foregoing, we reverse the order denying intervention and remand this case for a new permanency planning hearing.  At the hearing, the family court shall take information on the current status of Child, including an updated guardian ad litem report that addresses Child's current best interest, and Foster Mother shall be permitted to present her case.[4]  Finally, we caution the bench and bar that our decision today should not be construed as suggesting all motions to intervene by foster parents should be granted.  Ultimately the decision to grant intervention lies in the discretion of the family court and should be based on the unique facts of each case, but the court must weigh the four factors of the intervention rule.  We make our decision today based on the facts presented here.[5]

**REVERSED AND REMANDED.**

**LOCKEMY, C.J., and SHORT and MCDONALD, JJ., concur.**

---

would serve Child's best interests because it would provide the court additional information to make its decision.

[4] Allowing intervention does not guarantee Foster Mother obtains her requested relief; it merely gives her the opportunity to present her case.

[5] Because this is dispositive, we decline to address Foster Mother's remaining argument.  *See Futch v. McAllister Towing of Gerogetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (explaining this court does not need to address remaining issues on appeal when its determination of a prior issue is dispositive).